U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2012 OCT 25 PM 4:08
CLERK
BY _____PC_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ENTERGY NUCLEAR VERMONT )
YANKEE, LLC and ENTERGY NUCLEAR )
OPERATIONS, INC., )
                                                            )
        Plaintiffs, )
                                                          )
        v. )      Case No. 5:12-cv-206
                                                          )
PETER SHUMLIN, in his official capacity as )
GOVERNOR OF THE STATE OF )
VERMONT, WILLIAM SORRELL, in his )
official capacity as the ATTORNEY )
GENERAL OF THE STATE OF VERMONT, )
and MARY N. PETERSON, in her official )
capacity as the COMMISSIONER OF THE )
DEPARTMENT OF TAXES OF THE )
STATE OF VERMONT, )
                                                          )
        Defendants. )

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(Doc. 21)

       This matter comes before the court on the Fed. R. Civ. P. 12(b)(1) motion to dismiss this case for lack of subject matter jurisdiction filed by Defendants Peter Shumlin, William Sorrell, and Mary N. Peterson (collectively "the State"). (Doc. 21.) Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc., (collectively, "Entergy") oppose dismissal. The parties completed their filings on October 18, 2012.

       On September 11, 2012, Entergy filed a complaint for declaratory and injunctive relief (Doc. 1) and a motion for a preliminary injunction (Doc. 3), challenging and seeking to enjoin the implementation of Vermont's Electrical Energy Generating Tax, 32 V.S.A. § 8661, amended and effective as of July 1, 2012 (the "EET").

On September 24, 2012, the State moved to dismiss this case (Doc. 21), arguing that the court lacks subject matter jurisdiction because the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"), prohibits federal courts from enjoining the collection of state taxes provided the party challenging the tax has a "plain, speedy and efficient remedy" in state court. 28 U.S.C. § 1341. In opposing dismissal, Entergy contends that the EET is not a tax, and that even if it is, there is either no remedy before a state agency or state court, or such remedies are inadequate.

Entergy is represented by Robert B. Hemley, Esq., Matthew B. Byrne, Esq., Hollis L. Hyans, Esq., Thomas H. Steele, Esq., and Robert A. Salerno, Esq. The State is represented Assistant Vermont Attorney General Jonathan T. Rose and Assistant Vermont Attorney General Danforth Cardozo, III.

## I.  Factual and Procedural Background.

For purposes of adjudicating the motion to dismiss, the court limits its discussion to the facts and procedure relevant to the determination of the court's subject matter jurisdiction.

### *Entergy's Payments Under the MOUs*

Vermont Yankee Station, located in Vernon, Vermont, is the only nuclear power plant operating in Vermont. It has a capacity of over 600 megawatts of power. Vermont Yankee Station is authorized by the Federal Energy Regulatory Commission ("FERC") to sell power into the New England interstate market at market-based rates managed by ISO New England, a non-profit independent system operator, regulated by FERC, that administers New England's wholesale electricity markets.

Vermont Yankee Station began operating in 1972 pursuant to a forty-year license issued by the Atomic Energy Commission, the predecessor of the United States Nuclear Regulatory Commission (the "NRC"). In 2001, Entergy successfully bid to acquire the Vermont Yankee Station. Thereafter, the Vermont Public Service Board ("PSB") approved the sale of Vermont Yankee Station to Entergy and issued a Certificate of Public Good, permitting Entergy to own and operate it.

On February 21, 2003, Entergy sought approval from the PSB to modify Vermont Yankee Station to increase the power output by up to twenty percent (the "Uprate"). On or about November 2003, as part of its effort to obtain approval for the Uprate, Entergy entered into a Memorandum of Understanding with the Vermont Department of Public Service (the "DPS"), under which the DPS agreed to support the Uprate and Entergy committed to make a series of yearly payments to the State of Vermont from March 2006 through March 2012 (the "2003 MOU"). On March 15, 2004, the PSB approved the Uprate.

On March 10, 2005, Entergy proposed legislation to the Vermont Legislature for the purpose of permitting it to seek approval from the PSB to construct a dry fuel storage facility for spent nuclear fuel on-site at Vermont Yankee Station. As part of its efforts to obtain support for the legislation and approval of the storage facility, Entergy agreed with the DPS to enter into a second Memorandum of Understanding (the "2005 MOU"), which would require Entergy to make quarterly payments to the State of Vermont from January 2006 through March 2012. On June 21, 2005, Entergy entered into the 2005 MOU with the DPS, and the Governor signed 2005 Vt. Acts & Resolves No. 74 ("Act 74"), which authorized Vermont Yankee Station to seek approval from the PSB to construct a dry fuel storage facility. On April 26, 2006, the PSB approved the construction of the dry fuel storage facility.

In addition to authorizing approval for the dry fuel storage facility, Act 74 also created the Clean Energy Development Fund ("CEDF"), to be administered by the PSB for the purpose of "promot[ing] the development and deployment of cost-effective and environmentally sustainable electric power and thermal energy or geothermal resources for the long-term benefit of Vermont consumers, primarily with respect to renewable energy resources, and the use of combined heat and power technologies." 30 V.S.A. § 8015(c). Act 74 provided that the CEDF would consist of proceeds from the 2003 MOU, any MOUs with Entergy entered into before July 1, 2005 (thus including the 2005 MOU, signed on June 21, 2005), and "[a]ny other monies that may be appropriated to or deposited into the fund." *Id.* § 8015(a)(1)(B). The fund could be used "solely for the

3

purposes set forth in [the CEDF,]" not "for the general obligations of government[,]" and all interest and remaining balances at the end of any fiscal year were to "remain part of the fund." *Id.* § 8015(a)(2). Between January 2006 and March 2012, Entergy made payments under the 2003 and 2005 MOUs.

### *The Challenged EET*

On May 15, 2012, Defendant Governor Peter Shumlin signed 2011 Vt. Acts & Resolves No. 143 ("Act 143"), which created the challenged EET as set forth in Chapter 213 of Title 32 of the Vermont Statutes Annotated. Act 143 repealed the previous Electric Generating Plant Education Property Tax and changed the rate of taxing power generation, effective July 1, 2012. Chapter 213 now provides for the EET as follows:

> (a) There is hereby assessed upon electric generating plants constructed in the state subsequent to July 1, 1965, and having a name plate generating capacity of 200,000 kilowatts, or more, a state tax at the rate of $0.0025 per kWh of electrical energy produced. The tax imposed by this section shall be paid to the commissioner on the electrical energy generated in the prior quarter on or before the 25th day of the calendar month succeeding the quarter ending on the last day of March, June, September, and December by the person or corporation then owning or operating such electric generating plant.
>
> (b) A person or corporation failing to make returns or pay the tax imposed by this section within the time required shall be subject to and governed by the provisions of sections 3202 and 3203 of [Title 32].

32 V.S.A. § 8661. Proceeds from the EET are deposited into the State's general fund and are not earmarked for any specific purpose. The CEDF, along with many other unrelated programs, is currently financed by transfers from the general fund.

### *State Procedures for Challenging a Tax*

Vermont law provides the procedure by which taxpayers are notified of either a deficiency in tax payments or a denial of a requested refund. *See* 32 V.S.A. § 3203. After receiving notice of a deficiency or the denial of a refund, a taxpayer has a right to appeal the initial decision within sixty days to the Commissioner of Taxes (the "Commissioner"). *See* 32 V.S.A. § 5883; *see also* Vermont Dep't of Taxes Organization and Rules of Procedure (the "Tax Dep't Rules") at Rule 4(a) ("A taxpayer or claimant . . .

may appeal to the Commissioner any action of the Department for which appeal is provided by law including assessment, denial in part or whole of a refund claim[.]").[1]

Upon appeal, a taxpayer is entitled to a hearing on the record before the Commissioner or a designated hearing officer. This hearing must conform to the requirements of Vermont's Administrative Procedure Act ("APA"), 3 V.S.A. §§ 801, *et seq. See* 32 V.S.A. § 5885(a). At the hearing, the taxpayer may introduce evidence in support of the taxpayer's claims and may submit proposed findings of fact and memoranda of law. *See* Tax Dep't Rules at 4(c)-(g). If the Commissioner denies the appeal or otherwise renders an adverse decision, the taxpayer may appeal that determination "to the Washington superior court or the superior court of the county in which the taxpayer resides or has a place of business." 32 V.S.A. § 5885(b).

In addition, in the event a taxpayer has exhausted its administrative remedies or they do not exist, a taxpayer may seek a direct determination of the constitutionality of a tax pursuant to Vermont's Declaratory Judgment Act. *See* 12 V.S.A. § 4711. If the taxpayer receives an adverse determination from the trial court, he or she may appeal that determination to the Vermont Supreme Court, and if it involves a question of federal constitutional law, he or she may petition for review by the United States Supreme Court.[2]

### *Entergy's Claimed Federal Court Subject Matter Jurisdiction*

In its complaint, Entergy "seeks an injunction against the imposition, assessment, and collection by [the State] of the amounts imposed by the Legislation" creating the challenged EET. (Doc. 1 at ¶ 1). It also seeks a declaration that the EET is unconstitutional on a number of grounds. (Doc. 1, Prayer for Relief, ¶ A.)

---

[1] The court takes judicial notice of the Tax Dep't Rules pursuant to Fed. R. Evid. 201, noting that Entergy has not contested the existence of the Rules or their content, only their applicability and adequacy.

[2] The Vermont Supreme Court has "exclusive jurisdiction of appeals from judgments, rulings, and orders of the superior court" under 4 V.S.A. § 2(a). The United States Supreme Court has appellate jurisdiction, under 28 U.S.C. § 1257(a), over "[f]inal judgments or decrees rendered by the highest court of a State" when "the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution."

5

Entergy asserts this court has subject matter jurisdiction "because this action involves the interpretation of 15 U.S.C. § 391 (preempting state taxation of electrical power that discriminates against interstate commerce), and the Supremacy, Equal Protection, Commerce and Contract Clause of the United States Constitution." (Doc. 1 at ¶ 15) (citations omitted). More specifically, it contends the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this case involves the interpretation of 15 U.S.C. § 391, and also pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. Entergy does not address the applicability of the TIA to its claims in either its complaint or motion for a preliminary injunction.

***The State's Motion to Dismiss and Entergy's Opposition***

The State makes a two-pronged argument as to why this case should be dismissed. First, it argues that Entergy's claims in federal court are barred by the TIA. Second, it contends that in the event they are not, the court should invoke principles of federal-state comity and decline to hear this matter in recognition of the federal courts' long-standing reluctance to interfere in matters of state taxation.

Entergy opposes dismissal, contending the EET is not a "tax" under the TIA. It contends the EET is instead an impermissible effort by the State to single out Entergy for discriminatory treatment and to collect payments under the expired MOUs in the guise of a new levy that affects Entergy, alone, in order to fund the CEDF. *See* Doc. 24 at 9 (the EET "was enacted as a purported tax in an attempt to force [Entergy] to continue making payments roughly equivalent to those made under contracts that have expired. Further, a substantial portion of the funds from the [EET] will go to finance the . . . CEDF, thereby advancing a regulatory agenda. Finally, the [EET] was imposed on Entergy for improper punitive purposes as part of an ongoing effort to shut down the Vermont Yankee Nuclear Power Station[.]").

6

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Entergy bears the burden of establishing this court's subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S 555, 561 (1992). When deciding a Rule 12(b)(1) motion challenging subject matter jurisdiction "at the pleading stage" before any "evidentiary hearings have been held," the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in [Entergy's] favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotation marks and citation omitted). "Nevertheless, even 'on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (internal quotation marks omitted)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

### B. The Tax Injunction Act.

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA prohibits declaratory as well as injunctive relief. *California v. Grace Brethren Church*, 457 U.S. 393, 408-11 (1982). The Supreme Court has "interpreted and applied [the TIA] as a jurisdictional rule and a broad jurisdictional barrier." *Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821, 826 (1997) (quotation omitted).

"Before the passage of the [TIA], the Supreme Court in *Matthews* [*v. Rodgers*, 284 U.S. 521 (1932)] had held that federal courts would not grant equitable relief against the imposition of state taxes, even when challenged on federal constitutional grounds, as long as the state provided an adequate remedy." *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 375 (3d Cir. 1978). "Enactment of the [TIA] was prompted by the readiness of some lower federal courts to assert jurisdiction over state tax challenges despite the Supreme Court's admonition in *Matthews*." *Id.* (citation omitted).

7

Accordingly, the TIA does not reflect a new congressional approach to federal court lawsuits over state taxes. To the contrary, the Supreme Court has, itself, "long recognized the dangers inherent in disrupting the administration of state tax systems." *Grace Brethren Church*, 457 U.S. at 410 n.23 (citing *Dows v. City of Chicago*, 78 U.S. 108, 110 (1870) ("It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved for collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.")).

"According to the Supreme Court, the purpose of the TIA is 'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.' Because of this, the Court has noted that the TIA prohibits, in most circumstances, a federal district court from issuing an injunction preventing the collection of state taxes." *Hattem v. Schwarzenegger*, 449 F.3d 423, 427 (2d Cir. 2006) (quoting *Grace Brethren Church*, 457 U.S. at 408-09).

The Second Circuit has held that two conditions must exist before the TIA can be invoked. "[F]irst, the surcharges must constitute 'taxes,' and second, the state remedies available to plaintiffs must be 'plain, speedy and efficient.'" *Hattem*, 449 F.3d at 427 (citations omitted). The Second Circuit has further explained that "the TIA should be interpreted to preclude jurisdiction only where 'state taxpayers seek federal-court orders enabling them to *avoid paying state taxes*.'" *Luessenhop v. Clinton Cnty*, 466 F.3d 259, 267 (2d Cir. 2006) (quoting *Hibbs v. Winn*, 542 U.S. 88, 107 (2004)). In its complaint, Entergy "seeks an injunction against the imposition, assessment, and collection by [the State] of the amounts imposed by the Legislation" -- the challenged EET. (Doc. 1 at ¶ 1-2). Although Entergy seeks a federal court order enabling it to avoid paying the EET, it contends that the TIA does not mandate dismissal of this case because the EET is not a "tax" for purposes of the TIA. This argument is somewhat at odds with Entergy's repeated arguments in its motion for a preliminary injunction that the EET is a "tax" that

8

violates various provisions of the federal Constitution and is preempted by 15 U.S.C. § 391.[3] *See, e.g.*, Doc. 3-1 at 21 ("Congress, pursuant to its plenary power over commerce, has expressly singled out the generation and transmission of energy for protection against discriminatory tax impositions by enacting 15 U.S.C. § 391[.]"); Doc. 3-1 at 21 ("The [EET], effective July 1, 2012, is in conflict with [Section 391] -- and, therefore, is preempted -- because it imposes what Vermont describes as a 'tax' with respect to the generation or transmission of electricity" that is impermissibly discriminatory); and Doc. 3-1 at 23, 25 (arguing the EET violates the Commerce Clause because the State has characterized it as a "tax" and because, among other things, it "bears no relationship to any services provided by the State"). Nevertheless, Entergy is correct that the court must first determine whether the EET is a "tax" under the TIA before it may conclude that the TIA applies.

### 1. Whether the EET is a Tax.

"Courts, including the Second Circuit, have broadly defined the word 'tax' under the Act to include any state or local revenue collection device." *Cmty. Hous. Mgmt. Corp. v. City of New Rochelle*, 381 F. Supp. 2d 313, 319 (S.D.N.Y. 2005) (citation omitted); *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000) (holding "the term 'tax' is subject to a 'broader' interpretation when reviewed under the aegis of the TIA.") (citations omitted); *Tramel v. Schrader*, 505 F.2d 1310, 1315 (5th Cir. 1975) (holding the TIA required dismissal of the federal court suit and observing that "for purposes of the federal statute the narrow 'tax' definition suggested by plaintiffs does not fit the frame."); *Robinson*, 581 F.2d at 374-76 (under the TIA, the word "tax"

---

[3] 15 U.S.C. § 391 provides:

> No State, or political subdivision thereof, may impose or assess a tax on or with respect to the generation or transmission of electricity which discriminates against out-of-State manufacturers, producers, wholesalers, retailers, or consumers of that electricity. For the purposes of this section a tax is discriminatory if it results, either directly or indirectly, in a greater tax burden on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce.

encompasses any state or local revenue collection device regardless of whether the state labels it a "tax" or an "assessment" as state labels do not control a federal determination of what constitutes a "tax" under the TIA).

Entergy invites the court to examine cases from other jurisdictions to determine whether the EET is a "tax" and argues that "[t]he starting point for the determination of whether a charge constitutes a 'tax' for purposes of the TIA is *San Juan Cellular Tel. Co. v. Public Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir. 1992) [*San Juan*]." (Doc. 24 at 22.)

Although some district courts in the Second Circuit have looked to *San Juan* for guidance in determining whether an assessment is a "tax" subject to the TIA or a "regulatory fee" which is not,[4] the Second Circuit, itself, has not adopted *San Juan* but has instead cited *San Juan* for the limited proposition that, "[i]n general, courts have 'tended . . . to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides narrow benefits to regulated companies or defrays the agency's costs of regulation.'" *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 713 (2d Cir. 1994) [*Cuomo*], *rev'd on other grounds New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) [*Travelers*] (quoting *San Juan*, 967 F.2d at 685). For that reason, the court declines Entergy's invitation to look elsewhere for tests and definitions for a "tax" under the TIA and instead examines the Second Circuit's controlling precedent on this issue.

In *Cuomo*,[5] the Second Circuit observed that "[a]lthough there is no bright line between assessments that are taxes and those that are not, most courts agree that assessments which are imposed primarily for revenue-raising purposes are 'taxes,' while

---

[4] *See, e.g., IMS Health Inc. v. Sorrell*, 2008 WL 2483299, at *3 (D. Vt. June 17, 2008); *Cmty. Hous. Mgmt. Corp.*, 381 F. Supp. 2d at 320; *United Food and Commercial Workers Unions and Food Emps. Benefit Fund v. DeBuono*, 101 F. Supp. 2d 74, 77 (N.D.N.Y. 2000).

[5] In *Hattem v. Schwarzennegger*, the Second Circuit reaffirmed its definition of "tax" as set forth in *Cuomo*, noting that "[i]n overruling *Cuomo*, the Supreme Court made clear in *Travelers* that it was not disturbing [the Second Circuit's] holding regarding the TIA." *Hattem*, 449 F.3d at 427 n.3.

levies assessed for regulatory or punitive purposes, even though they may also raise revenues, are generally not 'taxes.'" *Cuomo*, 14 F.3d at 713. Accordingly, "[n]otwithstanding the primary purposes ascribed to [assessments] by the State," those that "raise revenue which is ultimately paid into the State's general fund . . . serve general revenue-raising purposes [and thereby] constitute 'taxes' for purposes of the TIA." *Id.*

Here, the EET raises revenue on behalf of the State which is paid into the State's general fund which, in turn, is used for a variety of public purposes. As a result, in accordance with the Second Circuit's definition, the EET is a "tax" subject to the TIA. *Cuomo*, 14 F.3d at 713-14 (holding "tax" for purposes of the TIA is "any state or local revenue collection device" that serves "general revenue-raising purposes.") (citation omitted).

Were the court to apply the *San Juan* three-factor test,[6] the outcome would be no different. Vermont's Legislature has authorized the State to impose the EET and to collect it through Vermont's Department of Taxes. The entity that imposes the tax is thus a quintessential taxing authority and acts through its customary tax revenue collecting agency. It is the very type of state taxation activity with which the TIA forbids federal court interference. The EET is thus not similar to the "periodic" specialized fee imposed by a regulatory agency for purposes of carrying out its regulatory duties considered in *San Juan*. *San Juan*, 967 F.2d at 686.

The second *San Juan* factor focuses on the population subject to the charge. Although Entergy points out that the EET now applies only to Entergy, it cannot discount the possibility that in the future it could apply to other electric generating plants as well. By its terms, the EET applies to any "electric generating plant[] constructed in the state subsequent to July 1, 1965, and having a name plate generating capacity of 200,000 kilowatts, or more." 32 V.S.A. § 8661(a). Courts have held that "an assessment upon a

---

[6] The *San Juan* analysis calls for consideration of three factors: (1) the nature of the entity that imposes the charge; (2) the population subject to the charge; and (3) whether the charge is expended for general public purposes or whether it is for the regulation, benefit, or punishment of those upon whom the assessment is imposed consistent with a regulatory purpose. *San Juan*, 967 F.2d at 686.

11

narrow class of parties can still be characterized as a tax under the TIA." *Bidart Bros. v. California Apple Com'n*, 73 F.3d 925, 931 (9th Cir. 1996) (collecting cases and noting that fees imposed upon parolees for supervision and victims compensation; assessments on street's residents for street improvements; fees imposed on landfill owners; and jury fees imposed on plaintiffs have all been determined to be "taxes" for purposes of TIA); *see also Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 728 (7th Cir. 2011) (en banc) (statute requiring riverboat casinos to deposit three percent of revenues in special state fund imposes a "tax" under TIA); *Cumberland Farms, Inc. v. Tax Assessor, State of Me.*, 116 F.3d 943, 947 (1st Cir. 1997) (surcharge applied only to limited class of milk producers is a "tax" for purposes of TIA); *Robinson Protective Alarm Co.*, 581 F.2d at 372 (assessment directed solely at "private alarm signal system licensee[s]" for use of underground wires in Philadelphia was a "tax" for purposes of TIA). Accordingly, the fact that Entergy is currently the only electric generating plant subject to the EET does not preclude the EET from being a "tax" under the TIA,[7] nor does it foreclose Entergy from arguing before the state courts that its status as the sole taxpayer currently subject to the EET renders the EET unconstitutional.

As for the final *San Juan* factor, whether the assessment is expended for general public purposes, the EET produces revenue for Vermont's general fund. It does not provide "more narrow benefits to regulated companies or defray[ ]the agency's costs of regulation." *Cuomo*, 14 F.3d at 713 (quoting *San Juan*, 967 F.2d at 685). The fact that

---

[7] Entergy relies heavily on the Fourth Circuit's decision in *GenOn Mid-Atlantic, LLC v. Montgomery Cty, Md.*, 650 F.3d 1021 (4th Cir. 2011) wherein the court considered a county tax that applied to a single taxpayer and determined that it was part of a "regulatory scheme" where the preamble of the tax itself stated its purpose was to achieve "an 80% reduction in greenhouse gas emissions by 2050" and to reflect "programmatic efforts to reduce those emissions," *Id.* at 1025, and thus reflected a "punitive and regulatory fee" which sought to "serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive." *Id.* at 1026. The facts of this case are not only distinguishable, but the Second Circuit has clearly adopted a different approach which focuses on whether the purpose and use of the assessment can be characterized as serving general revenue raising purposes for a general fund. *See Cuomo*, 14 F.3d at 713 (those assessments that "raise revenue which is ultimately paid into the State's general fund . . . serve general revenue-raising purposes [and] constitute 'taxes' for purposes of the TIA.").

the State's general fund, in turn, funds the CEDF and numerous other public programs, functions, and activities is irrelevant. Indeed, Entergy's argument that partial use of the general fund to fund the CEDF would mean that any use of the general fund for a regulatory program renders all of the taxes contributing to the general fund regulatory fees. No court has adopted this approach. To the contrary, courts have examined whether the revenue generated is earmarked for achieving an explicit regulatory purpose. For example, in *GenOn Mid-Atlantic, LLC v. Montgomery County, Md.*, 650 F.3d 1021 (4th Cir. 2011), in finding an assessment was a regulatory fee not a tax, the court noted that while fifty percent of the funds raised by the challenged assessment would be dedicated to the general fund, the remainder was "earmarked for the County's greenhouse gas reduction programs," *Id.* at 1024, and were thus specifically devoted to a regulatory function. In contrast, the EET's ultimate use "provides a general benefit to the public, of a sort often financed by a general tax[.]" *San Juan*, 967 F.2d at 685. Applying the *San Juan* analysis, the EET clearly remains a "tax" for purposes of the TIA.

## 2. Whether There is an Adequate State Remedy.

The Supreme Court has noted that courts "must construe narrowly the 'plain, speedy and efficient' exception to the Tax Injunction Act," *Grace Brethren Church*, 457 U.S. at 413, and therefore must find a state remedy adequate if the taxpayer "can seek a refund . . . through administrative and judicial procedures" and "[i]f the taxpayer is unsuccessful . . . he may appeal the decision to higher state courts" and "ultimately seek review" in the Supreme Court. *Id.* at 414. Provided nothing precludes the taxpayer from "'rais[ing] any and all constitutional objections to the tax' in the state courts" *Id.* (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981), the TIA "contemplates nothing more." *Id.* (quoting *Rosewell*, 450 U.S. at 515 n.19). Under the TIA, a plaintiff bears the burden of showing the absence of an adequate state law remedy. *See Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 340 (1990). "Mere speculation" about the insufficiency of state review will not suffice. *Id.* at 341.

The EET provides that "[a] person or corporation failing to make returns or pay the tax imposed by this section within the time required shall be subject to and governed

13

by [32 V.S.A. § 3203]." 32 V.S.A. § 8661(b). 32 V.S.A. § 3203 provides for notifications of deficiency or denials of refund requests, and this statute is, in turn, expressly incorporated into 32 V.S.A. § 5883, which provides for a full hearing and Commissioner review of notifications of deficiency and denials of refunds. The Commissioner's decision under 32 V.S.A. § 5883 is expressly made reviewable in the Vermont Superior Court by 32 V.S.A. § 5885(b). More generally, the Commissioner is also provided with the authority to "[h]old hearings, administer oaths and examine under oath any person relating to his or her business or relating to any matter within the commissioner's jurisdiction," 32 V.S.A. § 3201(a)(3), and to "[a]ssess, determine, revise and readjust the taxes imposed in this title." 32 V.S.A. § 3201(a)(7).

Entergy contends these remedies are not applicable to Section 8661(b) because that section refers only to the failure to pay taxes and does not mention refunds thereby supporting a conclusion that the Vermont Legislature sought to preclude EET taxpayers from seeking a refund. Not only do the relevant statutes fail to reflect this alleged intent, Entergy's interpretation contravenes Section 8661(b)'s specific incorporation of 32 V.S.A. § 3203 and well-established Vermont law that "appeal rights are to be liberally construed in favor of persons exercising those rights." *Casella Const. Inc. v. Dep't of Taxes*, 2005 VT 18 ¶ 5, 178 Vt. 61, 63, 869 A.2d 157, 159 (2005) (quoting *In re Hignite*, 2003 VT 11, ¶ 9, 176 Vt. 562, 844 A.2d 735 (2003) (mem.)); *see also Langrock v. Dept. of Taxes*, 423 A.2d 838, 839 (Vt. 1980) ("It is . . . a well stated rule of law that in construing an ambiguous statute doubts are to be resolved against the taxing power and in favor of the taxpayer.").

As the State further points out, Entergy's claim that a refund is unavailable is particularly untenable in light of its predecessor's use of these very same allegedly unavailable review procedures to raise substantially the same challenges to a previous tax and to claim a refund. *See In re Vt. Yankee Nuclear Power Corp. Elec. Generating Tax*, ATC-91-103 (1997) (administrative decision reviewing the denial of VYNPC's request for a tax refund, based on the purported unconstitutionality of 32 V.S.A. §§ 8661-62).

Moreover, in the absence of an adequate state administrative remedy, Entergy would still have a "plain, speedy and efficient" state remedy for purposes of the TIA because its challenge to the EET could be brought directly in Vermont's state courts under Vermont's Declaratory Judgments Act. 12 V.S.A. § 4711. The Vermont Supreme Court has held that the Act authorizes facial challenges to the constitutionality of a statute. *Travelers Indemnity Co. v. Wallis*, 2003 VT 103, ¶ 18, 176 Vt. 167, 175, 845 A.2d 316, 323 (2003). The Second Circuit has recognized this as well. *See Murray v. McDonald*, 157 F.3d 147, 148 (2d Cir. 1998) ("We are now satisfied that the courts of Vermont are empowered to decide constitutional questions, even when reviewing determinations made by administrative agencies that lack such power."). This alone, is sufficient to satisfy the TIA's requirement of a "plain, speedy and efficient remedy." *See Tully v. Griffin, Inc.*, 429 U.S. 68, 76 (1976) (finding New York's Declaratory Judgment Act was a "plain, speedy and efficient remedy" for the purposes of the TIA).

Under the TIA, the remedy is sufficient if the state provides "a full hearing and judicial determination at which [a taxpayer] may raise any and all constitutional objections to the tax." *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989) (internal quotation marks and citation omitted). Here, that standard is clearly satisfied. Indeed, as the State points out, the Second Circuit has repeatedly concluded that Vermont's tax appeal procedures provide a "plain, speedy and efficient" remedy for challenges to the State's tax laws sufficient to preclude federal court jurisdiction under the TIA. *See Boivin v. Town of Addison*, 366 Fed. App'x 201 (2d Cir. 2010) (affirming district court's conclusion that taxpayer had a "plain, speedy and efficient" remedy under Vermont law and noting that "Boivin has admitted on appeal that Vermont state courts are empowered to consider constitutional claims; this is all that is necessary for the state court's remedies to be adequate under the [TIA]."); *Murray*, 157 F.3d at 147-48 (concluding that because "the courts of Vermont are empowered to decide constitutional questions" this provides a "plain, speedy and efficient remedy" for purposes of the TIA). Against this backdrop, Entergy has failed to establish that the

narrow exception to the TIA applies because state remedies to challenge the EET are inadequate.

In summary, because the EET is a "tax" for purposes of the TIA and because Entergy has a "plain, speedy and efficient" state court remedy, this court lacks subject matter jurisdiction to consider Entergy's requests for injunctive and declaratory relief whereby Entergy seeks to avoid payment of the EET based upon a federal court determination that it is unconstitutional.[8]

## CONCLUSION

For the reasons stated above, the State's motion to dismiss (Doc. 21) is hereby GRANTED and this case is hereby DISMISSED.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 25th day of October, 2012.

Christina Reiss, Chief Judge
United States District Court

---

[8] The court does not reach the State's alternative argument that this case should be dismissed in order to further principles of federal-state comity. See Levin v. Commerce Energy, Inc., 130 S. Ct. 2323, 2330 (2010) ("Comity's constraint has particular force when lower courts are asked to pass on the constitutionality of state taxation of commercial activity."); Rosewell, 450 U.S. at 525 n.33 (even where the TIA does not explicitly "bar federal-court interference in state tax administration, principles of federal equity may nevertheless counsel the withholding of relief.").

16